ALBERT C. FRIEDMAN AND ESTATE OF ISOBEL S. FRIEDMAN, DECEASED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Friedman v. Commissioner
Docket No. 6372-83.
United States Tax Court
T.C. Memo 1987-6; 1987 Tax Ct. Memo LEXIS 6; 52 T.C.M. (CCH) 1297; T.C.M. (RIA) 87006; January 6, 1987. *6 Respondent determined deficiencies and an addition to tax for fraud for the 1976 through 1979 taxable years, based upon unreported insurance commissions of petitioner-husband. Respondent also determined that petitioner-husband is not entitled to compute his tax liability using joint return rates for the 1977 through 1979 taxable years, which returns were filed subsequent to petitioner-wife's death. Held, petitioners have failed to shift to respondent the burden of going forward or to satisfy their ultimate burden of persuasion with respect to the determined deficiencies. Held further, petitioners are liable for self-employment tax imposed upon the unreported income under sec. 1401, I.R.C. 1954. Held further, respondent has failed to establish fraud under sec. 6653(b). Held further, the statute of limitations does not bar the assessment or collection of tax due for 1976 under sec. 6501(e), based upon a substantial omission from gross income; for 1977 under sec. 6501(c) based upon an agreement to extend the time for assessment; or for 1978 or 1979 under sec. 6501(a), based upon the late filing of these returns. Held further, petitioner-husband has made valid joint returns for 1977, *7 the year prior to petitioner-wife's death, and for 1978, the year of petitioner-wife's death, despite the absence of signatures on behalf of her estate. Held further, petitioner-husband has failed to establish that he is entitled to joint return rates as a "surviving spouse," within the meaning of section 2, for 1979, the year immediately following petitioner-wife's death. Wilbur Greenberg, for the petitioners. Joellyn R. Cattell, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: Respondent determined by notice of deficiency dated December 29, 1982 a deficiency in the Federal income tax of petitioners Albert C. Friedman and Estate of Isobel S. Friedman in the amount of $16,363, and an addition to tax under section 6653(b)[1] *8 in the amount of $8,182, for the taxable year ended December 31, 1976. Respondent also determined by a separate notice of deficiency, also dated December 29, 1982, deficiencies in the Federal income taxes and an addition to tax under section 6653(b) of petitioner Albert C. Friedman for the taxable years ended December 31, 1977 through December 31, 1979 as follows: Addition to Tax
Taxable Year
Deficiency
Under Section 6653(b)
1977
$94,704
$51,811
1978
26,853 18,056 1979
21,393 13,969 After concessions, the issues for decision are (1) whether petitioners are liable for deficiencies in their Federal income tax for each of the taxable years in issue for unreported income from insurance commissions of petitioner Albert C. Friedman, (2) whether any such deficiencies are attributable in part to unpaid self-employment tax under section 1401, (3) whether any part of any underpayment in each year is due to fraud under section 6653(b), (4) whether the statute of limitations bars the assessment and collection of such deficiencies or addition to tax, and (5) whether the returns filed for the 1977 through 1979 taxable years are valid joint returns. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and exhibits attached thereto are incorporated herein *9 by this reference. Petitioner Albert C. Friedman (hereinafter petitioner) resided in Wyncote, Pennsylvania at the time he filed his petition in this case. The petition was filed on behalf of petitioner and the estate of Isobel S. Friedman, who died in 1978. [3] There was no authorized representative or fiduciary appointed for her estate other than petitioner. Petitioner filed Federal income tax returns for each of the taxable years in issue with the Internal Revenue Service Center in Philadelphia, Pennsylvania. In each year, his tax liability was computed using married filing joint return rates, and he claimed personal exemptions for himself, his spouse, and for one or more dependent children. Petitioner and Isobel S. Friedman timely filed a joint 1976 return, which was signed on behalf of both of them. Petitioner's 1977 return, filed on April 16, 1979, was signed only on his behalf, and on the spouse's signature line was written "Deceased by ACF." On December 17, 1981, petitioner and respondent executed a document *10 entitled "Consent to Extend the Time to Assess Tax," Form 872, in which it was agreed that the tax due on the 1977 tax return "may be assessed at any time on or before December 31, 1982." The returns made for the 1978 and 1979 taxable years were filed on or about April 15, 1981; on both returns the spouse's signature lines were left blank. During the taxable years in issue, petitioner worked as an independent insurance agent or broker. Petitioner sold life insurance policies referred to as "minimum deposit insurance" on behalf of several insurance companies, including Mid-America Associates of Pa., Inc. (Mid-America), the Forbes Agency, Inc. (Forbes), Bergman Associates, Inc. (Bergman Associates) and Southwestern Life Insurance Company (Southwestern). On his Federal income tax returns, petitioner reported total gross receipts or sales as follows: Taxable Year
1976
1977
1978
1979
$55,573
$63,721
$49,325
$47,372
For each year in issue, petitioner received timely "Statements for Recipients of Miscellaneous Income" or "Nonemployee Compensation," Forms 1099, which forms were received in evidence as exhibits stipulated to by both parties. The Forms 1099 stated the following amounts and sources *11 of income: Taxable Year
Payer
1976
1977
1978
1979
Mid-America
$13,805
$147,432
$79,936
$80,089
Forbes
17,338
62,745
5,001
396
Bergman Associates
62,067
Southwestern
229
Totals
$93,439
$210,177
$84,937
$80,485
The Forms 1099 prepared by Mid-America and Forbes for 1977 through 1979 were based upon income or compensation for commissions to petitioner in either cash or noncash form, as follows: Taxable Year
Payer
1977
1978
1979
Mid-America
Cash
$ 43,330
$49,264
$42,711
Noncash
104,102
30,672
37,378
Totals
[4] $147,432
$79,936
$80,089
Forbes
Cash
$ 11,853
$ 5,001
$ 396
Noncash
50,892
Totals
[5] $ 62,745
$ 5,001
$ 396
Cash Totals
$ 55,183
$54,265
$43,107
In his Reply to Answer and New Matter, petitioner *12 alleged that his income should be recalculated in each of the years in issue, as follows: Taxable Year
Payer
1976
1977
1978
1979
Mid-America
(after rebate)
$7,000
$43,330
$49,263
$42,711
Forbes
2,483
11,853
5,000
396
Bergman Associates
*
Totals
*
$55,183
$54,263
$43,107
In 1979, petitioner was indicted by a Federal grand jury for conspiracy and for the interstate transportation of stolen property, specifically, insurance premium refund checks issued by an insurance company payable to petitioner's clients, which checks were cashed by petitioner. In 1980, petitioner was convicted of both offenses, and he later lost his license to sell insurance. In the statutory notices of deficiency, respondent determined deficiencies in petitioner and Isobel S. Friedman's Federal income taxes for the 1976 through 1979 taxable years, based upon the determination that petitioner had unreported income from commissions as an insurance agent or broker. The deficiencies were attributable in part to the self-employment tax imposed upon the determined unreported commissions, inasmuch as petitioner's insurance business was operated as a sole proprietorship. Respondent also determined an addition *13 to tax for fraud under section 6653(b) for each year and further determined that petitioner failed to make valid joint returns for 1977 through 1979. OPINION Unreported Income
The first issue for decision is whether petitioner has failed to report in income the full amount of his commissions with respect to his business as an independent insurance agent or broker. [6] *14 Respondent contends that the correct amount of petitioner's commissions are listed on the Statements for Recipients of Miscellaneous Income and Statements of Nonemployee Compensation, Forms 1099, prepared by the insurance companies for whom or with whom petitioner sold life insurance policies. [7] Petitioner maintains that he has reported the full amount of his income on his tax returns and that the Forms 1099 overstate the amount of commissions he "actually received" for each year. Petitioner argues that respondent must bear the burden of going forward with the evidence on this issue. A statutory notice of deficiency is entitled to a presumption of correctness with respect to the determined deficiencies. Welch v. Helvering,290 U.S. 111, 115 (1933). The substantive burden of proof or persuasion is upon the taxpayer, who must prove by a preponderance of the evidence that respondent's determinations are invalid. Rule 142(a); Helvering v. Taylor,293 U.S. 507, 515 (1935). However, where a taxpayer presents "competent and relevant credible evidence" that a determined deficiency is incorrect, *15 then the statutory presumption of correctness may be overcome so that the procedural burden of going forward with the evidence is shifted to respondent. Sullivan v. United States,618 F.2d 1001, 1008 (3d Cir. 1980). [8]
Petitioner argues that the testimony presented at trial is sufficient to shift to respondent the burden of going forward with the evidence. However, petitioner admits that he has not kept any books, records, or other documentation that might substantiate the amounts of income that he has reported on his returns. Petitioner merely offers a series of unsupported arguments that essentially provide that he did not actually receive commissions in the amounts stated on the Forms 1099. [9] For example, petitioner has not presented any evidence that portions of the total amounts of commissions stated are excludable from his income because they constitute commissions of the insurance companies, or that only the "cash items" [10] *17 portions of the commissions should be included in his income. We note his argument with respect to the *16 "cash items" does not explain those amounts reported on petitioner's returns, but rather appears to be made with respect to petitioner's alleged recomputations of his "earned income" set forth in his Reply pleadings. We conclude that petitioner has not produced sufficient competent and relevant credible evidence to support his arguments that the Forms 1099 overstate the amounts of commissions includable in his income, and consequently has failed to shift to respondent the burden of going forward with additional evidence of his correct tax liability. Accordingly, we hold that petitioner has failed to report in income the full amount of his insurance commissions, as set forth in the Forms 1099 that were received in evidence. Self-employment Tax Liability
The deficiencies determined in petitioner's income tax are attributable in part to his liability for self-employment tax imposed on the determined unreported income. *18 In his petition, petitioner denies that he has "any unreported self-employment income subject to the self-employment tax" or that he is liable for self-employment tax for any of the years in issue. In a subsequent pleading, petitioner admits that he is subject to self-employment tax but "only on that money received which was income." Petitioner bears the burden of proving that he is not liable for any self-employment tax. Rule 142(a); Simpson v. Commissioner,64 T.C. 974, 983 (1975). [11]
Section 1401 imposes a tax on "self-employment income." [12] *19 The tax on self-employment income is part of the income tax and is subject to the jurisdiction of this Court to the same extent and in the same manner as the income tax. Sec. 1.1401-1(a), Income Tax Regs. Petitioner has failed to establish that the notices of deficiency are incorrect with respect to the deficiencies determined for unreported income attributable to his sole proprietorship operation as an insurance agent or broker. Therefore, we also conclude that petitioner is liable for the self-employment tax imposed upon the determined unreported income. Addition to Tax
Respondent also has determined that petitioner is liable for an addition to tax under section 6653(b)[13] *20 for fraud for each year in issue. Petitioner argues that any deficiencies in his tax are not due to fraud, and in any event, that respondent has not computed properly the amount of the addition to tax. Respondent bears the burden of proving, by clear and convincing evidence, that part of an underpayment for each year is due to fraud. Sec. 7454(a); [14]Rule 142(b); Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). We find for petitioner on this issue solely because of respondent's failure to meet his burden of proof. There is no presumption of correctness that attaches to a statutory notice of deficiency with respect to an addition to tax for fraud. Fraud cannot be presumed but rather must be established affirmatively. Beaver v. Commissioner,55 T.C. 85, 92 (1970). For purposes of section 6653(b), the term "fraud" "means intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing." Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). Respondent argues that he has provided "sufficient evidence" to demonstrate that petitioner "acted in a deliberate and knowingly false manner with the intent to evade taxes due and owing." Respondent first contends that the fraud addition is appropriate here based upon petitioner's failure to report in income the full amounts of insurance commissions *21 stated on the Forms 1099, as discussed above. However, petitioner's failure to overcome that presumption of correctness accorded the determined deficiencies is insufficient to establish respondent's burden of proof with respect to the fraud issue. Anastasato v. Commissioner,794 F.2d 884, 889 (3d Cir. 1986), vacating and remanding a Memorandum Opinion of this Court (see n. 8). Also, although the consistent and substantial understatement of income by itself may be strong evidence of fraud, Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980), the issue of fraud is a question of fact to be determined upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Stratton v. Commissioner,54 T.C. 255, 284 (1970). Based upon the record as a whole as discussed below, we conclude that respondent has not established that petitioner's conduct was designed to conceal, mislead or otherwise fraudulently avoid paying taxes knowingly due. Respondent relies in part on petitioner's failure to have kept books and records that document the amount of *22 income reported on his tax returns. Respondent's position here is without merit for two reasons. First, respondent must show affirmative evidence of fraud by petitioner. Therefore, we reject respondent's argument that "[i]f the petitioner had produced evidence to show that he had made a full,complete, and honest return, and the respondent had been able to produce no evidence to the contrary, then perhaps the fraud penalty would not be applicable." (Emphasis by respondent.) Second, respondent must establish petitioner's intent to defraud, not merely that petitioner may have intentionally disregarded rules and regulations with respect to income taxes, as in the addition to tax under section 6653(a). See Webb v. Commissioner,394 F.2d 366, 377, 380 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. [15]
Respondent also argues that the fraud addition should be sustained based upon petitioner's past conduct, such as his failure to comply with the terms of a Payment Agreement, executed on September 18, 1975, with respect to taxes petitioner owed for the 1972 and 1973 taxable years. However, the Payment Agreement states on its face that it is a tentative *23 agreement that only relates to years prior to the taxable years in issue. We find that it has no weight with respect to whether petitioner intended to evade his taxes during the taxable years before us. Similarly, respondent relies upon petitioner's indictment and conviction for insurance fraud, for cashing checks issued by an insurance company to petitioner's clients, to support the determined addition to tax.Although such evidence certainly may be used to impeach petitioner's credibility, Rule 609, Federal Rules of Evidence, this fraud conviction does not establish that petitioner fraudulently failed to report in income the full amount of the commissions stated on the Forms 1099. Accordingly, we do not sustain respondent's addition to tax for fraud for any of the taxable years in issue. As a result, we need not address petitioner's argument that respondent has not properly computed the 50-percent addition to tax under section 6653(b). [16] *24 Statute of Limitations
In his petition, petitioner raises the defense that the statute of limitations bars the assessment of the determined deficiencies for each of the years in issue. In respondent's Answer, he alleges that the notices of deficiency have been issued timely for each year in issue. [17]
The general rule is that there is a 3-year period of limitations after a return is filed in which an assessment of tax may be made. Sec. 6501(a); [18] *26 sec. 301.6501(a)-1, Proced. and Admin. Regs. Petitioner and Isobel S. Friedman timely filed a joint 1976 Federal income tax return. The notice of deficiency issued with respect to the 1976 return is dated December 29, 1982, more than 5-1/2 years after the due date of the 1976 return. However, respondent argues that the applicable period *25 of limitations with respect to the 1976 return is 6 years. A 6-year period of limitations applies where there is a "substantial omission" from gross income, that is, where a taxpayer has failed to include an amount in excess of 25 percent of the amount of gross income stated on his or her return. Sec. 6501(e)(1); sec. 301.6501(e)-(1)(a)(1), Proced. & Admin. Regs. Respondent bears the burden of proving the existence of the 25-percent omission. Peters v. Commissioner,51 T.C. 226, 230 (1968). The deficiency determined in petitioner's 1976 tax is based upon his failure to report the full amount of insurance commissions stated on the Forms 1099 that petitioner received from his payers for each year in issue. The Forms 1099, which we have noted were received in evidence as exhibits stipulated to by both parties, state total income to petitioner for 1976 in the amount of $93,439, of which petitioner reported only $55,573, as discussed in the Unreported Income section above. Therefore, we find for respondent *27 that petitioner has failed to include $37,866, an amount in excess of 25 percent of the amount of gross income reported on his 1976 return. Petitioner's 1977 return was filed late, on April 16, 1979. The 3-year period of limitations begins to run from the date that a late return is filed rather than from its original due date. Section 6501(a). Also, another exception to the 3-year general rule provides that, before the expiration of the time prescribed for assessment, the taxpayer and respondent may consent in writing to extend the period for assessment. Section 6501(c)(4); sec. 301.6501(c)-1(d), Proced. & Admin. Regs. On December 17, 1981, and therefore within the original 3-year period, petitioner and respondent executed a written agreement providing that the tax due on the 1977 return "may be assessed at any time on or before December 31, 1982." The separate notice of deficiency issued with respect to the 1977 through 1979 taxable years is dated December 29, 1982. Although in his Reply to Respondent's Answer, petitioner denies that he entered into this agreement "with full knowledge of the consequences thereof," he has failed to address this issue at trial or on brief. Therefore, *28 he has not presented any argument with respect to why we should not give full effect to the agreement. We conclude that the notice of deficiency also is timely with respect to the 1977 return. Petitioner's 1978 and 1979 returns also were filed late, on or about April 15, 1981. As noted above, the 3-year period of limitations begins to run from their date of filing and not from their original due dates. Sec. 6501(a). Inasmuch as the notice of deficiency was issued in 1982, within 3 years of the date that the returns were filed, it therefore is timely with respect to both of these years as well. Accordingly, we conclude that the statute of limitations does not bar the assessment or collection of the determined deficiencies in any of the taxable years in issue. Filing Status
The final issue for decision is whether petitioner made valid joint Federal income tax returns for the 1977 through 1979 taxable years, all filed after Isobel S. Friedman's (decedent) death in 1978. In the notice of deficiency, respondent has determined that petitioner's tax liability should be computed based upon "married filing separate returns" filing status because petitioner's "spouse, or her duly authorized *29 representative or fiduciary, failed to sign * * * [petitioner's] income tax returns, making * * * [petitioner's] election to file a joint return invalid." Petitioner alleges that the computations of his tax liability should be based upon married filing joint returns rates. Petitioner bears the burden of proving that the returns made constitute valid joint returns. Howell v. Commissioner,10 T.C. 859, 866 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949). As a general rule, in the event of the death of one spouse, a joint return may be made with respect to the decedent spouse only by his or her "executor or administrator," sec. 6013(a)(3), sec. 1.6013-1(d)(3), Income Tax Regs., which term is defined as "the person who is actually appointed to such office and not a person who is merely in charge of the property of the decedent." Section 1.6013-4(c), Income Tax Regs.Section 6013(a)(3) continues however, that "in the case of the death of one spouse the joint return may be made by the surviving spouse with respect to both himself and the decedent" provided that the following three requirements are met in each year that the purported joint return is made: (1) no return for that taxable *30 year has been made by the decedent, (2) no executor or administrator has been appointed at or before the time that such joint return is made, and (3) no executor or administrator is appointed before the last day prescribed by law for filing the return of the surviving spouse. Sec. 6013(a)(3); sec. 1.6013-1(d)(3), Income Tax Regs. Inasmuch as there were no returns made by decedent for any of the years in issue, and there was no authorized representative or fiduciary appointed for the decedent's estate other than petitioner, he is entitled to make joint returns on behalf of himself and decedent. We next focus on whether petitioner's 1977 through 1979 returns constitute valid joint returns. The 1977 return was signed by petitioner on his own behalf only; on the spouse's signature line was written "Deceased by ACF." In 1981, petitioner and respondent executed an agreement to extend the time for assessment against petitioners' 1977 tax liability, which agreement was signed by petitioner on his own behalf and as "surviving spouse" on behalf of decedent. The 1978 and 1979 returns were signed by petitioner on behalf of himself only; on both returns the spouse's signature lines were left blank. *31 The regulations promulgated under section 6013 provide that a joint return shall be signed by both spouses or by an agent of one or both spouses, sec. 1.6013-1(a)(2), Income Tax Regs. However, it has been established under caselaw that the failure of one spouse to sign a return alone is not fatal to an election to make a joint return. Rather, the inquiry is a question of fact and focuses upon whether it was the intent of the parties to file the particular return in question as a joint return. Federbush v. Commissioner,34 T.C. 740, 755-758 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Lane v. Commissioner,26 T.C. 405, 408 (1956); Kann v. Commissioner,18 T.C. 1032, 1045 (1952), affd. 210 F.2d 247 (3d Cir. 1953); Howell v. Commissioner,10 T.C. at 866. [19]
Initially, we note that a joint Federal income tax return was filed for the 1976 taxable year, which was signed on behalf of both spouses. The purported joint returns made by petitioner for the 1977 through 1979 taxable years state that they are the returns of "Albert C. and Isobel Friedman," designate petitioner's filing status as married filing joint returns, and *32 claim personal exemptions for both petitioner and decedent. We conclude that petitioner has made valid joint returns for the 1977 and 1978 taxable years. The analysis is different, however, with respect to petitioners' 1979 return. In certain instances a taxpayer may make a joint return for the 2 years immediately following his or her spouse's death, provided that the taxpayer is a "surviving spouse." [20] This term is defined under section 2, as a taxpayer -- who maintains as his home a household which constitutes for the taxable year the principal place of abode (as a member of such household) of a dependent (i) who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer, and (ii) with respect to whom the taxpayer is entitled to a deduction for the taxable year under section 151. For purposes of this paragraph, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual. Sec. 2(a)(1)(B). See sections 1.2-2(a) and 1.6013-1(e), Income Tax Regs. Although on petitioner's 1979 return he has claimed one exemption for a dependent child *33 "who lived with" him during the year, he has not presented any evidence with respect to whether he furnished "over half of the cost of maintaining the household during the taxable year." Accordingly, we conclude that petitioner is entitled to compute his tax liability using married filing joint return rates for the 1977 and 1978 taxable years but has failed to establish that he is entitled to use joint return rates for 1979. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.
2. Resolution of this issue effects only the rate at which petitioners' tax liability would be computed and not the amount of any unreported income or addition to tax.↩
3. The record does not establish conclusively the year of petitioner Isobel S. Friedman's death. This finding is based upon respondent's unchallenged statement made at trial.↩
4. The Commissions Statement prepared by Mid-America for 1977 provided more specifically as follows: ↩
Cash Commissions Paid to AF
$ 43,330      Commissions Reported Net
90,150      Cash (Comms) Advanced to
Insurance Cos to Report
13,951      $147,432 [sic]
5. These figures are based upon a letter dated December 11, 1981 to respondent from Allan J. Oliner, an owner of Mid-America and Forbes. The Commissions Statement prepared by Forbes for 1977 provided more specifically as follows: ↩
Cash Items
$11,969.12
Noncash
50,891.50
$62,860.62
Charged
115.70
Net Total
$62,744.92
*. No amounts stated by petitioner.↩
6. During the taxable years in issue, gross income was defined as "all income from whatever source derived, including * * * [c]ompensation for services, including fees, commissions, and similar items * * *." Sec. 61(a)(1); sec. 1.61-2(a)(1), Income Tax Regs.Therefore, the question here is not whether petitioner has received income from his commissions, but rather whether he has failed to report the full amount of such income for each year in issue. 7. The notice of deficiency states that petitioner received income in the amount of $62,692 from Bergman Associates for 1976 but the Form 1099 prepared by this payer reports only the amount of $62,067. Additionally, there is no Form 1099 in evidence from American Guardian Life, also listed in the notice of deficiency as a payer to petitioner for 1976. Therefore, if we find for respondent on this issue, appropriate adjustments will be necessary in the parties' computations under Rule 155.↩
8. See also Anastasato v. Commissioner,794 F.2d 884, 886-888 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101, on remand T.C. Memo. 1986-400↩.
9. The following portion of petitioner's testimony at trial is particularly revealing: Q Did you receive all of the 1099s that were issued by the agencies with whom you did business or for whom you did business? A Yes. Q Did you report for the years '76 through '79 the amount of income that was set forth on those forms 1099? A No, sir, I did not. Q Why not? A Because I didn't get the money. Q Why did you not object to the amounts that were set forth on the 1099s to the agencies which submitted them to you? A Because the insurance company would have taken my license away, which they eventually did anyhow. ↩
10. The "noncash items" include amounts credited to petitioner for payments of the insurance policies' premiums. Petitioner was engaged in a complicated, and apparently illegal, insurance sales scheme whereby the premiums for policies he sold were never actually paid for by their insureds. Policies were issued having a cash value, and the insureds borrowed against this value and/or the commissions due to pay for the premiums in the first year. As a result of a so-called "interest build-up," the amount of the cash values and/or commissions were insufficient to cover the premiums due in subsequent years, and the insureds merely allowed their policies to lapse. As stated in the Findings of Fact, petitioner was indicted and convicted of insurance fraud for cashing premium refund checks issued to his clients and ultimately lost his license to sell insurance.
11. See also Amsler v. Commissioner,T.C. Memo. 1986-185↩.
12. Sec. 1401 provides in relevant part as follows: SEC. 1401. RATE OF TAX. (a) Old-Age, Survivors, and Disability Insurance. -- In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax * * *.↩
13. Sec. 6653 provides in relevant part as follows: Sec. 6653. FAILURE TO PAY TAX. * * * (b). Fraud. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * ↩
14. Sec. 7454 provides in relevant part as follows: SEC. 7454. BURDEN OF PROOF IN FRAUD * * * CASES. (a) Fraud. -- In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary. * * *↩
15. T.C. Memo. 1966-81↩.
16. For purposes of completeness, we note that where a taxpayer fails to file a timely return, such as petitioner has done here for the 1977 through 1979 taxable years, the 50-percent addition to tax under sec. 6653(b) is computed with respect to the amount of the "tax imposed" without taking into account the tax shown on the late return. Sec. 6653(c)↩; sec. 301.6653-1(c)(1)(ii), Proced. and Admin. Regs.
17. Inasmuch as respondent has failed to establish that petitioner is liable for fraud under section 6653(b) for any taxable year in issue, we need not address respondent's argument that such assessments may be made "at any time" under sec. 6501(c)↩.
18. Sec. 6501 provides in relevant part as follows: SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule. -- Except as otherwise provided in this section, the amoun of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return as filed on or after the date prescribed) * * *, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. * * * (c) Exceptions. -- * * * (4) Extension by agreement. -- Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. * * * * * * (e) Substantial Omission of Items. -- Except as otherwise provided in subsection (c) -- (1) Income taxes. -- In the case of any tax imposed by subtitle A -- (A) General rule. -- If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * *
19. See also Riportella v. Commissioner,T.C. Memo. 1981-463↩.
20. Technically, the appropriate filing status is "Qualifying widow(er) with dependent child."↩