Pano **ANASTASATO** and
Janice Anastasato

v.

**COMMISSIONER OF
INTERNAL REVENUE.**

Appeal of Pano **ANASTASATO**,
Appellant in 85–5728.

Appeal of Janice **ANASTASATO**,
Appellant in 86–5143.

Nos. 85–5728, 86–5143.

United States Court of Appeals,
Third Circuit.

Argued June 17, 1986.

Decided July 8, 1986.

Alan H. Levine (argued), Frankfurt, Garbus, Klein & Selz, P.C., New York City, Edward H. Rosenthal, of counsel, for appellants.

Kathryn E. Rooklidge (argued), Michael L. Paup, Charles E. Brookhart, Roger M. Olsen, Acting Asst. Atty. Gen., Glenn L. Archer, Jr., Asst. Atty. Gen., Department of Justice, Tax Division, George M. Sellinger, Washington, D.C., for appellee.

Before SEITZ, HUNTER, and MANSMANN, Circuit Judges.

### OPINION OF THE COURT

HUNTER, Circuit Judge.

Pano Anastasato, the taxpayer, has been involved in the travel business since 1954. In 1960, he established his own travel agency, Panmarc, Inc. ("Panmarc"), and a tour operation business, Wholesale Tours International ("WTI"). During the years 1974 through 1976, both companies were wholly owned by the taxpayer.

Panmarc purchased tickets for WTI's customers. Panmarc was licensed by the International Air Transport Association ("IATA"), a trade association of international carriers, to purchase tickets directly from the airlines. Under IATA regulations, the maximum commission that airlines could pay travel agents was ten percent of the ticket price. Compliance with these regulations was not required by law. Despite the regulations, it was common for airlines to pay excess commissions known as overrides or override commissions. Payment of overrides had to be made with strict confidentiality because IATA imposed severe sanctions for the violation of its regulations.

Panmarc did a large volume of business with KLM Royal Dutch Airlines ("KLM"). On April 15, 1981, the Commissioner issued statutory notices of deficiency to Anastasato totaling $633,468.00 for the years 1974, 1975, and 1976. The deficiency notice included additions to tax for fraud pursuant to I.R.C. § 6653(b) (1982). The Commissioner alleged that KLM had paid override commissions to the taxpayer by making payments into a Swiss bank account identified by the code name "GIGE." This account contains over one million dollars.

The Tax Court heard the testimony of revenue agents, employees of Panmarc, and employees of KLM. The record re-

veals that, in 1970, the taxpayer and Arne Duyf, Manager for Passenger Sales of KLM in the United States, met several times at KLM's office to discuss override payments. Charles Bulterman, Duyf's assistant, often participated in the negotiations. In 1973, Bulterman was promoted to Duyf's position. Andre Luber was promoted to the position of Assistant Manager for Passenger Sales in the United States and given the responsibility for negotiating overrides.

In 1973, the taxpayer approached Luber seeking additional override commissions. From 1973 to 1975, the taxpayer and Luber engaged in negotiations. Bulterman, Gabriel Warshawsky, who was Executive Vice President of WTI, and Ray Masillo, another WTI employee, were often present at the meetings. From April 1974 to December 1974, override commissions were set at fifteen percent. From January 1975 to March 1975, they were set at twenty-one percent. The taxpayer often complained to his employees that KLM was not making its payments. The agreement was renegotiated and the override commissions set at eighteen percent for April 1975 through October 1975. Four million dollars worth of tickets were sold in 1974 and 1975 and were subject to the override commissions. For the period February 1976 to October 1976, override commissions were again set at eighteen percent.

Warshawsky and Luber both testified about the meetings held to negotiate the override commissions. Warshawsky stated that both sides sought to obtain the best deal. Luber would obtain Bulterman's approval and then prepare the supporting documentation for the KLM head office and accounting department.

In late 1979, Bohdan Huzar, a special agent with the Internal Revenue Service, began the investigation of the taxpayer. Huzar met with Paul Mifsud, general counsel to KLM in the United States, both in the United States and at the KLM headquarters in The Netherlands. Huzar also met with a Mr. Westpladt, an employee in the KLM accounting department in The Netherlands. Huzar did not take copies of any documents with him, but he recorded the contents of several in a notebook and prepared a report describing the documents. He described debit slips showing payments of approximately one million dollars from KLM to a Swiss bank account with the code name GIGE. He also saw KLM cash paid out slips totaling $26,000 signed by the taxpayer. Huzar's report stated that Westpladt had said that KLM made the payments to the Swiss bank account on behalf of the taxpayer. As hearsay, Huzar's report was admitted at trial only for the limited purpose of describing the methodology used by the Commissioner in issuing the notice of deficiency.

At trial, the taxpayer denied that he had ever received the override commissions. He admitted that he had discussed overrides with KLM officials, but he maintained that he never accepted overrides because he was worried about the IATA penalties. He seemed to imply that Bulterman was pocketing the overrides and that he merely went along with the scheme to maintain his business relationship with KLM.

On the basis of this evidence, the Tax Court upheld the Commissioner's determination of deficiencies and additions to tax in the amount of $641,288 for income tax liability for the years 1974, 1975, and 1976. However, the court held that the Commissioner had not proven fraud by the taxpayer.

■ The taxpayer claims that the Commissioner's deficiency determination was arbitrary and unreasonable. In addressing this contention, we first note that the government's deficiency assessment is generally afforded a presumption of correctness. *See United States v. Janis*, 428 U.S. 433, 441, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935); *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Baird v. Commissioner*, 438 F.2d 490, 492 (3d Cir.1970). This presumption is a procedural device that places the burden of producing evidence to rebut the presumption on the taxpayer. *See Janis*, 428 U.S. at 441, 96 S.Ct. at 3025. A court usually will

not look behind the Commissioner's determination, even though it may be based on hearsay or other evidence inadmissible at trial. *See Dellacroce v. Commissioner,* 83 T.C. 269, 280 (1984).

■ Several courts, including this one, have noted an exception to the general rule that they will not examine the basis of the deficiency determination before recognizing the Commissioner's presumption of correctness. Under this exception, a court must not give effect to the presumption of correctness in a case involving unreported income if the Commissioner cannot present "some predicate evidence connecting the taxpayer to the charged activity." *Gerardo v. Commissioner,* 552 F.2d 549, 554 (3d Cir.1977). Most of the cases stating that the Commissioner is not entitled to the presumption based on a naked assessment without factual foundation have involved illegal income. *See Weimerskirch v. Commissioner,* 596 F.2d 358 (9th Cir.1979) (drugs); *Gerardo v. Commissioner,* 552 F.2d 549 (3d Cir.1977) (gambling); *Pizzarello v. U.S.,* 408 F.2d 579 (2d Cir.), *cert. denied,* 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969) (gambling); *Dellacroce v. Commissioner,* 83 T.C. 269 (1984) (racketeering payoff); *Llorente v. Commissioner,* 74 T.C. 260 (1980), *aff'd in part and rev'd in part,* 649 F.2d 152 (2d Cir.1981) (drugs). Given the obvious difficulties in proving the nonreceipt of income, we believe the Commissioner should have to provide evidence linking the taxpayer to the tax-generating activity in cases involving unreported income, whether legal or illegal.

■ Along with other courts, we have recognized that the Commissioner's deficiency determination is entitled to a presumption of correctness and that the burden of production as well as the ultimate burden of persuasion is placed on the taxpayer. *See Sullivan v. United States,* 618 F.2d 1001, 1008 (3d Cir.1980). The government meets its initial burden of proof in an action to collect tax merely by introducing its deficiency determination. *See United States v. Stonehill,* 702 F.2d 1288, 1293 (9th Cir.1983), *cert. denied,* 465 U.S. 1079, 104 S.Ct. 1440, 79 L.Ed.2d 761 (1984). The presumption of correctness establishes a prima facie case, but it arises only if supported by foundational evidence connecting the taxpayer with the tax-generating activity. *See Gerardo,* 552 F.2d at 554. The presumption shifts the burden of proof to the taxpayer. *See DiMauro v. United States,* 706 F.2d 882, 884 (8th Cir.1983).

■ If the taxpayer rebuts the presumption by showing that it is arbitrary and erroneous, *see Helvering v. Taylor* 293 U.S. at 515, 55 S.Ct. at 290, the presumption disappears. Courts differ on whether the burdens of production and persuasion can be shifted to the Commissioner. Most agree that if the presumption drops out the burden of going forward shifts to the Commissioner. However, some courts have stated that at this point the ultimate burden of persuasion, or risk of nonpersuasion, remains on the taxpayer. *See Higginbotham v. United States,* 556 F.2d 1173, 1176 (4th Cir.1977); *United States v. Rexach,* 482 F.2d 10 (1st Cir.), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973); *Sullivan,* 618 F.2d at 1008. Other courts, however, have indicated that in unreported income cases the ultimate burden shifts to the Commissioner. *See Keogh v. Commissioner,* 713 F.2d 496, 501 (9th Cir.1983); *United States v. Stonehill,* 702 F.2d at 1294; *Stout v. Commissioner,* 273 F.2d 345, 350 (4th Cir.1959). In 1976, the Supreme Court noted, but did not reconcile, this conflict in the circuits. *See United States v. Janis,* 428 U.S. at 442, 96 S.Ct. at 3026.

In *Sullivan,* we stated that if the taxpayer rebuts the presumption with credible and relevant evidence sufficient to establish that the determination was erroneous, the procedural burden of going forward with the evidence shifts to the Commissioner, 618 F.2d at 1008. We further held, however, that the ultimate burden of proof or persuasion remains with the taxpayer. If the taxpayer offers evidence that the determination was incorrect and the Commissioner offers no evidence to support the assessment, the taxpayer will have met his ultimate burden "unless such evidence is specifically rejected as improbable, unreasonable, or questionable." *Id.* at 1009. *See also Demkowicz v. Commissioner,* 551

F.2d 929, 931 (3d Cir.1977). The court can reject the taxpayer's evidence if it is contradicted by the Commissioner.

■ In the case before us, the Commissioner was entitled to the presumption of correctness because he introduced evidence linking the taxpayer to the tax-generating activity. The taxpayer was involved in the travel business and purchased a large volume of tickets from KLM. The taxpayer and KLM engaged in extensive negotiations regarding override commissions and the taxpayer was entitled to receive these commissions. The taxpayer has not shown that the deficiency determination was arbitrary and without factual foundation and he therefore cannot rely on *Gerardo* to dispel the presumption.

After discussing the relevant law and the facts of the case, the Tax Court properly concluded that the deficiency determination was entitled to its usual presumption of correctness. The court then should have determined whether the taxpayer had at trial, nevertheless, met his burden of ultimate persuasion and shown that the determination was incorrect. The court noted only that "petitioners herein (the taxpayer) presented no affirmative evidence to demonstrate any error in respondent's said determinations, having contented themselves throughout this trial with attacking only the *basis* for respondent's determinations, rather than the accuracy thereof." This statement indicates that the court believed that, once the Commissioner was granted the usual presumption of correctness, the question whether the taxpayer received the allegedly unreported income no longer remained at issue and only the amount of the assessment could be considered.

■ Even if the Commissioner is entitled to the initial presumption of correctness, the taxpayer must be given the opportunity to prove that the determination was incorrect. In this case, the taxpayer's evidence consisted of denials that he ever received the income in question. A general denial of liability is insufficient to meet the taxpayer's burden of nonpersuasion. *See Avco Delta Corp. v. United States*, 540 F.2d 258 (7th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 939, 50 L.Ed.2d 752 (1977). We are "not bound to accept taxpayer's testimony at face value even when it is uncontradicted if it is improbable, unreasonable, or questionable." *Baird*, 438 F.2d at 493. The Tax Court apparently rejected the taxpayer's testimony on nonreceipt of income not as "improbable, questionable, or unreasonable," *Baird*, 438 F.2d at 493, but as irrelevant once the Commissioner provided a factual foundation for the assessment and the presumption of correctness arose. The court erred since it was possible that the taxpayer could ultimately prevail by proving that while he engaged in the activity in question he never received the income in question.

It is possible that the Tax Court, on proper consideration of the taxpayer's denial of receipt of the income, will find such denials improbable. Nevertheless, because the court did not explicitly or implicitly [1] reject the taxpayer's testimony, we will remand the case for consideration of this point.

■ The taxpayer also contends that it was improper for the Tax Court to uphold the deficiency determination while finding in the taxpayer's favor on the civil fraud count. The court found that the Commissioner had not, as was required to show fraud, proven that override payments were made to a Swiss bank account on the taxpayer's behalf. The taxpayer argues that there is a fundamental inconsistency in finding that, for the purpose of the deficiency determination, there was proof that the taxpayer had received the overrides, while, for the purposes of the fraud action, there was not sufficient proof that the taxpayer had received the overrides. Although this argument is superficially appealing, the inconsistency can be explained

1. The taxpayer here would have us hold that the Tax Court may reject his testimony only if it does so explicitly. He points to our decision in *Demkowicz v. Commissioner* for this proposition. We read *Demkowicz* as requiring that the Tax Court reject taxpayer's testimony either explicitly or implicitly, 551 F.2d at 932, but we believe that the Tax Court did neither in the case before us.

by the well-accepted rule on the burdens of proof in tax cases. As we discussed above, in a deficiency action the burden of proof or non-persuasion is placed on the taxpayer. However, in a fraud case both the burden of production and the ultimate burden of proof are placed on the Commissioner. Fraud must be shown by clear and convincing evidence. *See Raley v. Commissioner,* 676 F.2d 980, 981 (3d Cir.1982). The Tax Court, therefore, could find that the taxpayer was unable to rebut an initial determination of receipt of income by proving nonreceipt, while also finding that the Commissioner, without the aid of an initial presumption of correctness, was unable to prove receipt by clear and convincing evidence.

For the reasons discussed above, we will vacate the decision of the Tax Court and remand for reconsideration in light of this opinion.