EUGENE SULLIVAN AND MARY ANN SULLIVAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sullivan v. Commissioner
Docket Nos. 26143-86, 23024-87
United States Tax Court
T.C. Memo 1989-30; 1989 Tax Ct. Memo LEXIS 30; 56 T.C.M. (CCH) 1114; T.C.M. (RIA) 89030; January 17, 1989; As amended January 17, 1989 Jay B. *31 Oppenheim, for the petitioners. Theodore Marasciulo, Jr., for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioners' 1980, 1981 and 1983 Federal income tax and additions to tax against petitioner Eugene Sullivan as follows: Additions to tax
Year
Deficiency
§ 6653(b) [1]
§ 6653(b)(1)
§ 6661
1980
$ 26,785.31
$ 13,392.65
n/a
--
1981
26,038.12
13,019.06
n/a
--
1983
23,779.72
n/a   * $ 11,889.86
$ 5,944.31
Respondent alleged that the underpayments for 1980, 1981 and 1983 were attributable to petitioner's failure to report extortion payments, rental income from two beach properties and gain from the sale of municipal bonds and that petitioner's failure to report this income was due to his attempt to fraudulently evade his income tax. Respondent has conceded, however, that petitioner Eugene Sullivan had no taxable *32 income from his rental properties during any of the years at issue and that petitioners' failure to report capital gains in 1983 was not due to fraud. The Commissioner also determined deficiencies in petitioners' 1982 Federal income tax and additions to tax as follows: Additions to tax
Year
Deficiency
§ 6653(a)(1)
§ 6653(a)(2)
§ 6661
1982
$ 22,845.57
$ 1,142.28
50% of the
$ 2,284.56
interest due
on $ 22,845.57
In an amendment to his answer, respondent further alleged that all or part of the underpayment of tax required to be shown on petitioners' 1982 Federal income tax return was due to fraud. Respondent alleges that the 1982 underpayments were attributable to petitioner Eugene Sullivan's failure to report his receipt of extortion payments and that his failure to report this income was due to fraud. The parties have agreed that petitioner Mary Ann Sullivan, pursuant to section 6013(e), is relieved of her joint and several liability for the deficiencies for 1980, 1981 and 1982 and for the additions to tax for 1982 as an innocent spouse. Respondent determined that the additions to tax pursuant to sections 6653(b) for *33 1980 and 1981 and 6653(b)(1) and (2) for 1983 are applicable solely to petitioner Eugene Sullivan. The parties have also agreed that petitioner Mary Ann Sullivan is not entitled to relief pursuant to section 6013(e) for 1983. Petitioner Mary Ann Sullivan is not, however, liable for the addition to tax pursuant to section 6661 for 1983. After concessions the issues we must decide are: (1) whether petitioner Eugene Sullivan failed to report income in the amount of $ 50,000 for each of the years in issue, (2) whether petitioner Eugene Sullivan is liable for additions to tax for fraud for each of the years in issue, and (3) whether petitioner Eugene Sullivan is liable for an addition to tax pursuant to section 6661 for taxable years 1982 and 1983. FINDINGS OF FACT Petitioners resided in Philadelphia, Pennsylvania when they filed their petition in this case. Respondent mailed a statutory notice of deficiency to petitioners for their 1982 taxable year on April 9, 1986, and mailed a statutory notice of deficiency for petitioners' 1980, 1981, and 1983 taxable years on April 15, 1987. In March of 1980 petitioner Eugene Sullivan became Inspector of the Northeast Division of the Philadelphia *34 Police Department Vice Squad ("vice squad"). He was the highest ranking officer in that department until 1983. During the years in issue, petitioner had three administrative lieutenants serving under him: Walter McDermott from March 1980 to February 1982, James Bowman (deceased) from February 1982 to June 1982, and John Czmar for nine days starting in late August or early September of 1982. Petitioner handpicked both McDermott and Bowman as his lieutenants. During the years of petitioner's employment with the vice squad, the operations of the squad were used by petitioner and his subordinates for extortion. Under petitioner's command and direction the members of the vice squad collected protection payments from owners of illegal lotteries (numbers writers and numbers bankers) and owners of illegally used video poker machines in exchange for not enforcing various laws governing gambling and prostitution. Beginning in March 1980 until March 1982, George Bowie, a Philadelphia police officer in the vice squad collected protection payments of approximately $ 10,000 per month. These payments were divided among the vice squad members. As Inspector, petitioner received approximately *35 $ 4,000 of these payments per month while Lieutenant McDermott received $ 2,000. In addition to the monthly $ 10,000 protection payments, Bowie collected extra protection money during vacation and Christmas time from certain payers. This money was also divided up in the same proportions among squad members, the lieutenant, and petitioner. Beginning in the spring of 1980, Bowie also collected $ 850 a week from John Catagnus who owned a massage parlor. Four hundred dollars of this money was distributed to petitioner each week. From March 1982 to March 1983, Thomas Volkmar, another Philadelphia police officer in the vice squad began picking up protection payments for the squad. Volkmar replaced Bowie who was fired from the squad after the FBI intercepted by wiretap a conversation about extortion payments between him and a "numbers banker." Petitioner helped Bowie fabricate a story for authorities that concealed petitioner's and Bowie's extortion activities. Like Bowie, Volkmar collected approximately $ 10,000 per month increasing to approximately $ 14,000 by September of 1982. Volkmar divided the extortion payments among the vice squad members giving Lieutenant Bowman, McDermott's *36 successor, $ 6,000 per month, $ 3,500 of which was distributed to petitioner. Petitioner also received yearend extortion payments as holiday graft in indeterminate amounts. In September of 1982 John Czmar became the lieutenant. Volkmar began distributing part of the protection money he collected to Czmar who would in turn distribute part of the money to petitioner. Petitioner's monthly share was $ 3,500 until the FBI investigation was revealed in the Fall of 1982. Czmar continued to collect and distribute the protection money even after he was detailed out of the vice squad. Petitioner's monthly share was at least $ 2,500 until the middle of 1983. During 1985 petitioner and others were indicted in the United States District Court for the Eastern District of Pennsylvania on one count of conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951 (1982). Petitioner himself was indicated on 29 counts of Hobbs Act extortion in addition to the conspiracy count. Petitioner was convicted of 14 counts of extortion and one count of conspiracy. Petitioners reported gross income, gross salary income and net salary income on their Federal income tax returns as follows: *37 Net Salary
Taxable
Gross Income
Gross Salary
Income After
Year
Reported
Income
Deductions
1980
$ 35,935.82
$ 34,297.73
$ 26,017.39
1981
41,077.00
37,982.00
28,581.24
1982
51,562.00
49,489.00
37,701.17
1983
53,836.00
51,065.00
38,752.17
None of the extortion payments were reported on petitioners' income tax returns. OPINION The first issue we must address is whether petitioner Eugene Sullivan ("petitioner") received unreported taxable income in the amount of $ 50,000 for each of the years in issue. Respondent's determination of deficiency is presumptively correct, and petitioner bears the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933). Petitioner argues, first, that the statutory notice of deficiency is arbitrary, excessive, or without foundation and, consequently, that the burden of going forward with the evidence was shifted to respondent. See United States v. Janis,428 U.S. 433 (1976). Respondent asserts that petitioner received from 1980 to 1983 at least $ 50,000 per year of extortion income which he failed to report on his *38 1980, 1981, 1982 and 1983 Federal income tax returns. Petitioner maintains that he received no extortion or protection payments during the years in issue. Respondent's reasons for attributing to petitioner the unreported income from the extortion activities in which he was a co-conspirator are rational and sound. Anastasato v. Commissioner,794 F.2d 884 (3d Cir. 1986), affg. a Memorandum Opinion of this Court. It cannot be seriously contended otherwise. Because of petitioner's 14 convictions of extortion pursuant to the Hobbs Act, 18 U.S.C. § 1951, petitioner is collaterally estopped from denying that he unlawfully and wrongfully used his public office to extort money. Because actual receipt of money is not an element of the crimes of which he was convicted, petitioner may litigate whether he received any payments and the accuracy of the amounts respondent determined he received. Nevertheless, his convictions provide ample evidence of petitioner's connection with a source of unreported income. The evidence presented by petitioner consisted of his testimony, the testimony of petitioner Mary Ann Sullivan and the testimony of their son *39 as to their thrifty and conservative lifestyle. Petitioner denies receiving any payments. We found this testimony incredible in the face of the consistent, detailed and extensive testimony of his co-conspirators in the extortion scheme. Petitioner gave no explanation of the evidence against him except to challenge the credibility of respondent's witnesses. We, however, found respondent's witnesses to be credible. The testimony of respondent's witnesses at trial indicates that petitioner received the largest share of extortion payments collected by his subordinates from 1980 to the middle of 1983. His share exceeded $ 50,000 in 1980, 1981 and 1982. While his share declined toward the end of 1982 and into 1983, petitioner failed to challenge respondent's determination other than to deny that he received any amount. Because petitioner failed to carry his burden of proof, respondent's determination must be sustained. Moreover, petitioner would receive yearend bonus extortion payments which would appear to be sufficient in amount to make up for his declining share of the graft at the end of 1982. Petitioner received $ 400 each week to avoid enforcing laws against prostitution *40 at one massage parlor. George Bowie, Thomas Volkmar, and William Maahs, who were responsible for collecting protection payments from owners of illegal lotteries and gambling machines, each testified to petitioner's direction and control over the extortion scheme in the vice squad. They indicated that petitioner's share of their collections varied from $ 3,500 to more than $ 4,000 each month from 1980 to 1983 and $ 2,500 each month for several months in 1983. John Czmar, the third lieutenant to work under petitioner testified that he received protection payments from subordinates and personally gave petitioner as much as $ 3,500 per month of extorted money for approximately ten to twelve months. Beginning in 1982, John Kellis, a longtime personal friend of petitioner and owner of several video gambling machines, testified that he gave petitioner money for the protection of his machines in both the East and Northeast Divisions of Philadelphia. While the amount of these payments is not known, we will not resolve the uncertainty in petitioner's favor. Further, while respondent's witnesses did not testify that petitioner received $ 50,000 in 1983, respondent does not bear the burden *41 of proof. Petitioners have failed to prove that respondent's determination of deficiencies in the statutory notices was erroneous. Consequently, we hold that petitioner received unreported income of $ 50,000 for each of the years in issue. The next issue we must decide is petitioner's liability for additions to tax for fraud pursuant to section 6653(b) for 1980 and 1981, and sections 6653(b)(1) and (2) for 1982 and 1983. Respondent bears the burden of proving that petitioner underpaid his tax in each of the years at issue and that each underpayment was due to fraud by clear and convincing evidence. Section 7454(a). Fraud is a factual question to be resolved by an examination of the entire record. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). To establish fraud, respondent must prove by clear and convincing evidence that petitioner acted with specific intent to evade taxes that he knew or believed he owed. Stephenson v. Commissioner,79 T.C. 995, 1005 (1982), affd. 748 F.2d 331 (7th Cir. 1984); Rule 142(b). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the *42 underpayment of tax for each of the years in issue is attributable to fraud. Lee v. United States,466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. Fraud is never presumed, Beaver v. Commissioner,55 T.C. 85, 92 (1970), but may be proven by circumstantial evidence because direct proof of a taxpayer's intent is rarely available. Stephenson v. Commissioner,79 T.C. at 1005-1006. Courts have relied on a number of indicia of fraud in deciding section 6653(b) cases. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence. Solomon v. Commissioner,732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam a Memorandum of Opinion of this Court; Beaver v. Commissioner,55 T.C. at 93. First, consistent omission of large amounts of income is strong evidence of fraud. Estate of Hill v. Commissioner,59 T.C. 846 (1973); Foster v. Commissioner,391 F.2d 727, 733 (4th Cir. 1968), affg. *43 on this issue a Memorandum Opinion of this Court; Brooks v. Commissioner,82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). Second, a failure to maintain adequate books and records may indicate fraudulent intent. Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court, cert. denied 397 U.S. 962 (1970). Third, a taxpayer's dishonesty in business transactions or willingness to defraud others may indicate a willingness to defraud respondent. Afshar v. Commissioner,T.C. Memo. 1982-242, affd. without published opinion 692 F.2d 751 (4th Cir. 1982), cert. denied 461 U.S. 928 (1983). Finally, a taxpayer's business experience and knowledge of the tax laws may tend to prove or disprove the existence of fraud. See O'Connor v. Commissioner,412 F.2d 304, 310 (2d Cir. 1969), affg. on this issue a Memorandum Opinion of this Court, cert. denied 397 U.S. 921 (1970). Petitioner did not report any of the extortion payments he received on his Federal income tax returns for 1980, *44 1981, 1982, or 1983, and he kept no books and records of the money he received from the vice squad extortion scheme. He attempted to conceal his activities by helping George Bowie to fabricate a story for authorities that would deny his involvement in extortion. Respondent proved by clear and convincing evidence that the amounts omitted from income were substantial. Moreover, petitioner was convicted of 14 counts of extortion which stands as convincing evidence of petitioner's willingness to defraud others. Finally, petitioner was sophisticated enough in financial and tax matters to know that extorted funds were taxable when he received them. Consequently, we hold petitioner Eugene Sullivan liable for additions to tax pursuant to section 6653(b) for 1980 and 1981 and sections 6653(b)(1) and (2) for 1982 and 1983. Petitioners contend that our consideration of their 1980 and 1981 tax years is barred by the three year statute of limitations provided in section 6501(a). Because petitioners' returns at issue were fraudulent, no statute of limitation applies to petitioners' 1980 and 1981 tax years. Section 6501(c)(1). Respondent also determined that petitioner is liable for an *45 addition to tax pursuant to section 6661 for 1982 and 1983. Petitioner Eugene Sullivan, who bears the burden of proof on this issue, had no authority for omitting this income and did not disclose his receipt of the extortion payments on his 1982 or 1983 returns. See section 6661(b)(2)(B). Extorted funds are undisputedly taxable. James v. United States,366 U.S. 213 (1961). Therefore, we hold petitioner liable for the additions to tax pursuant to section 6661. To reflect concessions, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated.↩
*. Plus 50% of interest due on $ 23,779.72 pursuant to section 6653(b)(2). ↩