T.C. Memo. 1998-143

UNITED STATES TAX COURT

ROBERT A. & GERRI M. SMITH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2369-97.                    Filed April 16, 1998.

George B. Smith and Carolyn A. Truby, for petitioners.

George D. Curran, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, Judge:  Respondent determined the following
deficiencies, additions to tax, and accuracy-related penalties
for 1990 through 1993:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|-------------------------------|---------------------|
| 1990 | $45,031 | $11,258 | $9,006 |

| 1991 | 61,687  | 15,422 | 12,337 |
| 1992 | 98,291  | 24,573 | 19,658 |
| 1993 | 175,247 | 43,811 | 35,049 |

After concessions, the issues for decision are:

1.  Whether respondent's determinations are entitled to the presumption of correctness.  We hold that they are.

2.  Whether petitioners demonstrated that respondent's determinations were erroneous.  We hold that they did to the extent provided below.

3.  Whether petitioners are liable for additions to tax for failure to file their tax returns in a timely manner.  We hold that they are.

4.  Whether petitioners are liable for accuracy-related penalties for substantial understatements.  We hold that they are to the extent provided below.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Robert and Gerri Smith resided in Felton, Delaware, at the time they filed their petition.  At all relevant times, petitioners owned and operated:  Guns & Goodies, a retail sporting goods store located in Dover, Delaware, and National Distributors, an ammunition wholesale business.  Mrs. Smith managed Guns &

Goodies, which sold a wide variety of hunting and fishing goods, while Mr. Smith managed National Distributors, which sold ammunition at gun shows. Petitioners also owned three residential rental properties. Petitioners did not maintain any personal bank accounts but did maintain two business accounts: a general checking account into which they deposited business and rental receipts and a payroll checking account.

During each year in issue, Guns & Goodies and National Distributors had total gross receipts of approximately $1 million, 60 percent to 70 percent of which were in cash. Petitioners regularly deposited most of their business receipts into their general checking account. Some of petitioners' business receipts, however, were never deposited and were used to pay petitioners' personal living expenses. Petitioners did not maintain records of the cash that they received but did not deposit, and they regularly disposed of cash register tapes and deposit slips. They did not maintain inventory records, except for 1993 ending inventory, or sales receipts. Petitioners retained monthly bank statements and maintained a firearms log which recorded the identity of the purchaser and serial number of every gun purchased.

Petitioners failed to pay taxes relating to their employees and, as a result, on December 23, 1993, the Internal Revenue Service (IRS) seized Guns & Goodies. The IRS informed

petitioners that they would not be allowed to reopen their business until they paid their payroll tax delinquencies and filed their 1990, 1991, and 1992 Federal income tax returns.

The accounting firm of Faw, Casson, & Co., LLP (Faw), prepared petitioners' 1990, 1991, and 1992 returns and filed them on January 5, 1994. On each return, the activities of both businesses are combined and reported under the name National Distributors; accrual is designated as the method of accounting; and cost is designated as the method of valuing closing inventory. Petitioners failed to provide Faw with sufficient information to calculate accurately gross receipts and cost of goods sold. As a result, the return entries were based largely on estimates (e.g., gross receipts were ascertained by analyzing bank deposits). Each return contains the following statement:

> Amounts contained in this return were obtained from the best available information. In certain cases this includes estimates. As additional / better information becomes available this return may be amended.

On November 8, 1994, petitioners filed amended returns for 1990, 1991, and 1992. Each amended return contains the following statement:

> Taxpayers' original Form 1040 was prepared using estimates where data was not available. Missing information has been obtained and reviewed and the original figures have been adjusted accordingly. * * *

Petitioners, on their amended returns, designated accrual as the method of accounting and cost as the inventory method. On June

5, 1995, petitioners filed their 1993 return, on which they designated cash as the method of accounting and marked the "Does not apply" box when asked to identify the inventory method. Most of the entries on the 1990, 1991, and 1992 amended returns and on the 1993 return were estimates based on Faw's work papers. In April of 1995, respondent assigned petitioners' case to Revenue Agent Eric Brown. Agent Brown issued Information Document Requests for a variety of documents and work papers, including financial statements, general ledgers, books of original entry, inventory records, bank statements, canceled checks, deposit slips, cash register tapes, and purchase invoices. Petitioners did not provide financial statements, contemporaneous books of original entry (other than for 1993 ending inventory), deposit slips, or cash register tapes. Petitioners did provide copies of bank statements, canceled checks, a disorganized assortment of purchase invoices, and work papers that Faw prepared. Agent Brown requested information from vendors that sold goods to petitioners, but received only documents relating to guns sold to petitioners in 1992 and 1993.

After reviewing the documents that petitioners maintained and that Faw created to prepare petitioners' returns, Agent Brown requested a clarification of how petitioners arrived at the ending inventory figure on petitioners' 1993 return. In a letter

prepared by Faw, signed by Mrs. Smith, and dated November 10, 1995, petitioners responded:

> Inventory was counted at retail (market price).  After all inventory was counted and totaled, guns were marked down 15% to cost (by multiplying retail price by 85%) and other inventory was marked down 40% to cost (by multiplying retail price by 60%).  This method of deriving the year-end inventory valuation has been used by me since the inception of the business, approximately 30 years ago.

After reading the letter, Agent Brown determined that petitioners had a 15-percent gross profit on guns and a 40-percent gross profit on other goods.  Mrs. Smith intended, however, for the percentages stated in her letter to reflect markup, rather than gross profit percentages.  A markup percentage is profit divided by cost while a gross profit percentage is profit divided by sales.  For example, an item that costs $100 and sells for $118 has an 18-percent markup (i.e., $18 profit divided by $100 cost) and a 15-percent gross profit (i.e., $18 profit divided by $118 sales).  Accordingly, a 15-percent gross profit is equal to an 18-percent markup, and a 40-percent gross profit is equal to a 67-percent markup.

With the information from petitioners and third parties, Agent Brown adjusted petitioners' cost of goods sold and reconstructed their gross receipts as follows:

|  | 1990 | | | 1991 | | |
|---|---|---|---|---|---|---|
|  | original | amended | adjusted | original | amended | adjusted |
| Gross Receipts | $916,099 | $881,353 | $1,001,017 | $999,482 | $992,372 | $1,177,850 |
| Cost of Goods Sold | 667,606 | 711,496 | 622,769 | 728,371 | 797,224 | 729,929 |
| Beginning Inventory | 131,250 | 131,250 | 131,250 | 131,250 | 88,014 | 131,250 |

| | | | | | |
|---|---|---|---|---|---|
| Purchases | 667,606 | 668,260 | 622,769 | 728,371 | 763,995 | 729,929 |
| Ending Inventory | 131,250 | 88,014 | 131,250 | 131,250 | 54,785 | 131,250 |

| | 1992 | | | 1993 | |
|---|---|---|---|---|---|
| | original | amended | adjusted | original | adjusted |
| Gross Receipts | $887,837 | $1,125,400 | $1,412,380 | $1,308,700 | $1,750,539 |
| Cost of Goods Sold | 645,550 | 912,465 | 884,197 | 1,061,858 | 1,088,859 |
| Beginning Inventory | 131,250 | 54,785 | 131,250 | 93,817 | 131,250 |
| Purchases | 645,550 | 951,497 | 884,197 | 1,122,691 | 1,108,576 |
| Ending Inventory | 131,250 | 93,817 | 131.250 | 154,650 | 165,082 |

To determine gross receipts, Agent Brown first allocated cost of goods sold between guns and other goods. He determined that each beginning and ending inventory figure for 1990 through 1993 consisted of 28.2 percent guns and 71.8 percent other goods (i.e., this allocation was consistent with petitioners' 1993 inventory records). He accepted as correct the purchase amounts from Faw's work papers, used information received from vendors to determine the amount of purchases attributable to gun purchases, and subtracted gun purchases from total purchases to determine the amount of purchases attributable to other goods. Agent Brown did not have sufficient information to categorize the 1990 and 1991 purchases. After allocating cost of goods sold between guns and other goods, Agent Brown applied the gross profit percentages to determine gross receipts. For 1992 and 1993, he applied a gross profit of 15 percent to the cost of guns (i.e., he multiplied cost by 118 percent) and 40 percent to the cost of other goods (i.e., he multiplied cost by 167 percent). He did not have sufficient information to allocate between the cost of guns and the cost of other goods sold in 1990 and 1991, so he

determined gross receipts by applying a 37-percent "weighted gross profit percentage", which was based on his analysis of 1992 and 1993 gross profit percentages, to the total cost of goods sold for 1990 and 1991.

On December 26, 1996, respondent issued a notice of deficiency to petitioners for their 1990 through 1993 tax years. On February 6, 1997, petitioners filed their petition, and on February 19, 1997, they submitted a second amended return for 1992.

                              OPINION

I.  Respondent's Presumption of Correctness

We must first ascertain whether respondent's determinations are presumed correct.  Anastasato v. Commissioner, 794 F.2d 884, 886 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101; see Welch v. Helvering, 290 U.S. 111, 115 (1933).  For the presumption to attach respondent must link petitioners to a tax-generating activity.  Anastasato v. Commissioner, supra at 887. Respondent has linked petitioners to two tax-generating activities--Guns & Goodies and National Distributors. Petitioners contend, however, that respondent's determinations were arbitrary.

First, petitioners contend that they kept adequate records and, therefore, respondent did not have the authority to reconstruct gross receipts.  To support their contention,

petitioners note that respondent accepted as correct most of the information that petitioners provided and that maintenance of the records that petitioners did not provide (e.g., cash register receipts) is not required. The fact that petitioners' own accountants had to resort to estimates and reconstruction methods to prepare the original and amended returns, however, belies petitioners' contention. It is well settled that taxpayers have a duty to maintain records that enable them to file correct returns, DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); sec. 1.446-1(a)(4), Income Tax Regs., and that in the absence of such records respondent has the authority to reconstruct a taxpayer's income, Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989). Petitioners' records for National Distributors were nonexistent, and their records for Guns & Goodies were, at best, scant. In addition, they routinely disposed of important source documents such as cash register tapes and sales slips. Cf. Kikalos v. Commissioner, T.C. Memo. 1998-92 (finding that failure to maintain source documents, particularly cash register tapes, justified respondent's use of an indirect method of reconstruction); Edgmon v. Commissioner, T.C. Memo. 1993-486 (finding that the absence of source documents such as cash register tapes and sales slips amounted to inadequate records). Therefore, we reject petitioners' contentions.

Second, petitioners contend that respondent could only resort to an indirect method of reconstruction (i.e., the gross profit percentage method) if the direct methods of reconstruction (e.g., bank deposit method, net worth method, etc.) were infeasible. Contrary to petitioners' assertion, respondent may use the gross profit percentage method as long as such method is reasonably implemented. See Schroeder v. Commissioner, 40 T.C. 30, 33 (1963) (stating that respondent is not limited to any particular method of reconstruction and may use any method that is reasonable in light of the surrounding facts and circumstances); Bollella v. Commissioner, T.C. Memo. 1965-162, affd. 374 F.2d 96 (6th Cir. 1967). Respondent's use of the gross profit percentage method was both appropriate and reasonable in light of the information that petitioners provided (e.g., petitioners' letter to respondent).

Third, petitioners contend that respondent's determination was arbitrary because respondent had no authority or factual basis to adjust cost of goods sold or to change petitioners' method of accounting. Respondent may change a taxpayer's method of accounting whenever the taxpayer's method of accounting does not clearly reflect income. Sec. 446(b); Thor Power Tool Co. v. Commissioner, 439 U.S. 522 (1979). For 1990, 1991, and 1992, petitioners kept virtually no records, yet they reported their income on the accrual method--a method that demands strict

accounting.  For 1993, petitioners changed to the cash method without the Commissioner's permission to do so, and they used a method of valuing inventory that fails to comport with any recognized method.  Respondent, in essence, placed petitioners on the cash method of accounting and the retail method of valuing inventory, which is the method that most closely resembles petitioners' inventory method.  Given respondent's broad authority pursuant to section 446, the paucity of information that petitioners maintained with respect to cost of goods sold, and the fact that petitioners did not have a valid method of accounting for reporting inventories, we reject petitioners' contention.

Accordingly, respondent's determinations were not arbitrary and petitioners must prove the correct amount of their tax liability by a preponderance of the evidence.

II.  Adjustments to Respondent's Determinations

The Court may redetermine petitioners' tax liability if and to the extent that petitioners demonstrate by a preponderance of the evidence that respondent's determination is wrong. Anastasato v. Commissioner, supra at 888; Miller v. Commissioner, 237 F.2d 830, 838 (5th Cir. 1956), affg. in part, revg. in part and remanding T.C. Memo. 1955-112.  With respect to cost of goods sold, to the extent the cost of hunting and fishing licenses was included in purchases for the years in issue, such costs should

be subtracted from purchases and deducted as business expenses. With respect to gross receipts, two adjustments are warranted. First, the cost of goods sold used in the calculations of gross receipts should be adjusted pursuant to the previous sentence. Second, instead of applying gross profits of 15 percent (i.e., a markup of 18 percent) to guns and 40 percent (i.e., a markup of 67 percent) to other goods, the cost of guns and other goods should be marked up by 15 percent and 40 percent, respectively (i.e., cost of guns should be multiplied by 115 percent and cost of other goods should be multiplied by 140 percent).

In all other respects that have not been specifically addressed, we conclude that respondents' deficiency determination is correct.

III.  The Additions to Tax

Respondent determined additions to tax pursuant to section 6651(a)(1) for each of the years in issue.  Section 6651 provides an addition to tax for failure to file a tax return in a timely manner, unless such failure was due to reasonable cause and not due to willful neglect.  Petitioners concede liability for 1990, 1991, and 1992 and have the burden of proving that their 1993 return was timely.  See Welch v. Helvering, 290 U.S. at 115. They contend that they filed their 1993 return in a timely manner but they failed to present any credible evidence supporting their

contention. Accordingly, petitioners are liable for the section 6651(a)(1) additions to tax.

IV. The Accuracy-Related Penalties

Respondent also determined that for 1990 through 1993 petitioners were liable, pursuant to section 6662(a), for substantial understatements of tax penalties. Section 6662(a) imposes a penalty equal to 20 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Pursuant to section 6662(d), an understatement is the amount by which the correct tax exceeds the tax reported on the return. The understatement is substantial if it exceeds the greater of $5,000 or 10 percent of the correct tax. Sec. 6662(d)(1)(A).

Respondent calculated petitioners' understatement by subtracting the tax reported on their originally filed returns from the tax that should have been reported on those returns. Petitioners contend that the amount of any understatement should be based on the tax reported on the amended returns for 1990, 1991, and 1992 instead of the original returns for those years. We reject petitioners' contention. Petitioners filed their returns only upon the demand of the IRS collection officer that seized their retail store. Under these circumstances, we conclude that it was appropriate for respondent to use the amount reported on petitioners' original returns. See sec. 1.6662-

4(b)(4), Income Tax Regs. (cross-referencing sec. 1.6664-2(c), Income Tax Regs.). Accordingly, if the recomputed deficiencies satisfy the statutory percentage or amount, petitioners will be liable for such penalty.

All other contentions raised by the parties are either irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered pursuant to Rule 155</u>.