In re Manuel J. XENAKIS, Debtor.

Manuel J. Xenakis, Plaintiff,

v.

United States of America, Department of the Treasury, Internal Revenue Service, Defendant.

Bankruptcy No. 00–20773–BM.
Adversary No. 00–2262–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 28, 2001.

Donald R. Calalaro, Esq., for Plaintiff.

Donald A. Role, Esq., for Defendant.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor Manuel Xenakis seeks a determination that a debt he owes to defendant United States Internal Revenue Service ("IRS") for unpaid wagering taxes, interest, and penalties is dischargeable. He denies engaging in the wagering activity upon which the debt is based.

IRS asserts that debtor has not rebutted the presumed correctness of the assessments upon which the debt is based and maintains that the entire debt therefore is not dischargeable.

For reasons set forth below, we conclude that the portion of the debt attributable to unpaid wagering taxes and accrued interest is not dischargeable whereas the portion attributable to penalties is dischargeable.

## — FACTS —

For several decades debtor was an operative in the illegal business of writing numbers in the Pittsburgh area. On at least five occasions he was convicted of illegal bookmaking and wagering. His most recent conviction was in 1991, when he was convicted of illegal bookmaking and was incarcerated in a federal prison for a period of eighteen months. Debtor admits that he was writing numbers when federal authorities charged him with illegal bookmaking in July of 1991.

Debtor became involved in December of 1989 in an illegal numbers writing enterprise run by a childhood friend named Jerry Sabatini, whose operation was run from Cleveland, Ohio. He reported $250 per week as "miscellaneous income" derived from his involvement with Sabatini on his Form 1040 federal income tax returns for 1989 through 1991.

After he was released from prison, IRS informed debtor that he owed wagering taxes for numbers written while he was involved with Sabatini and demanded that debtor complete and submit monthly Form 730 returns for accepting illegal wagers. Debtor denied writing any numbers for Sabatini and never submitted any Form 730 returns.

IRS issued assessments in August of 1995 for unpaid wagering taxes it claimed debtor owed for numbers written for each month while he was involved with Sabatini. The total amount assessed for this twenty-month period was $700,066.25. Of this amount, $371,065.00 was assessed for unpaid wagering taxes, $236,235.75 was for accrued interest, and $92,765.50 was for penalties. With the exception of July of 1991, when debtor was arrested, the monthly amount of wagering tax assessed ranged between $17,955.00 for one month and $20,199.00 for each of seven different months.

Debtor filed a voluntary chapter 7 petition on February 4, 2000. The bankruptcy schedules list assets having a total declared value of $58,275.11. The most significant asset listed is a house with a declared value of $55,000.00, which debtor owns jointly with his former wife. The schedules also list debts totaling $993,249.33. The most significant liability by far is an unsecured priority debt in the amount of $873,455.77 owed to IRS for "form 730 gambling taxes" incurred between 1989 and 1991.

After conducting the § 341 meeting, the chapter 7 trustee reported that this was a no-asset case.

Debtor commenced the above adversary action against IRS on June 22, 2000. Count I of the amended complaint seeks a determination that the above debt of principal, interest, and penalties owed to IRS is excepted from the exception to discharge—i.e., is dischargeable—by § 523(a)(7) of the Bankruptcy Code. Count II objects to the claim of IRS and demands that IRS prove its claim.

The adversary action was tried on February 7, 2001, at which time both sides were given an opportunity to offer evidence on the issues in the case.

## — DISCUSSION —

Subsection 523(a) of the Bankruptcy Code provides in part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -

(1) for a tax ... —

(B) with respect to which a return, if required -

(i) was not filed...;

(7) to the extent such debt is for a ... penalty ..., payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty -

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the [bankruptcy] petition; ....

11 U.S.C. 523(a).

According to Count I of the amended complaint, the above wagering tax, accrued interest, and penalties assessed by IRS are not excepted from discharge because they fall within the scope of § 523(a)(7).

This approach is fundamentally flawed. By its express terms, § 523(a)(7) pertains only to certain *penalties*. It says nothing about any underlying tax and accrued interest. Although debtor has not articulated his position clearly, we believe it is his position that the underlying tax and accrued interest do not fall within the scope of § 523(a)(1)(B)(i) and consequently are not excepted from discharge as a result of his Involvement with Sabatini. As for the tax penalties, debtor asserts that they also are dischargeable because they fall within the scope of the exceptions to the exception to discharge found at § 523(a)(7)(A) and (B).

We shall address these contention sequentially.

## — I —

## COUNT I

### A.) Wagering Tax and Accrued Interest.

Based on his testimony at trial, we understand debtor as asserting that the debt he purportedly owes for unpaid wagering taxes and accrued interest is not excepted from discharge by § 523(a)(1)(B)(i) because he was not required to file returns for accepting illegal wagers.

A federal excise tax equal to two percent (2%) of the amount wagered is imposed on any wager that is not authorized under the law of the state in which the wager is accepted.[1] 26 U.S.C. § 4401(a)(2). Any person who is in the business of accepting such wagers is liable for and is required to pay the tax on all wagers placed with them. 26 U.S.C. § 4401(c). They must file a monthly return on Form 730, whether or not such liability was incurred for that particular month. 26 U.S.C. § 6011(a) and 26 C.F.R. § 44.6011(a)–1.[2]

■ A tax assessed by IRS generally is presumed to be correct. *Anastasato v. Commissioner,* 794 F.2d 884, 886 (3d Cir.1986)(citing, *Inter alia, U.S. v. Janis,* 428 U.S. 433, 441, 96 S.Ct. 3021, 3023, 49 L.Ed.2d 1046 (1976)). This presumption is, however, a qualified one. It does not come into play in a case involving unreported income unless IRS presents "some predicate evidence connecting the taxpayer to the charged activity". *Gerardo v. Commissioner,* 552 F.2d 549, 554 (3d Cir.1977). IRS need only produce some "minimal evidence linking the taxpayer to that source of income before the presumption of correctness will attach". *Palmer v. United States Internal Revenue Service,* 116 F.3d 1309, 1313 (9th Cir.1997). This limited qualification applies whether the alleged unreported income is legal or illegal. *Anastasato,* 794 F.2d at 887.

■ Once it attaches, the presumption of correctness operates as a procedural device which places upon the taxpayer the burden of producing rebuttal evidence. *Id.* A general denial of liability by the taxpayer will not suffice to rebut the pre-

sumption. *Anastasato,* 794 F.2d at 888. Something additional is required. Moreover, a court need not accept a taxpayer's uncontroverted testimony at face value if the testimony is improbable, unreasonable, or questionable. *Id.* The taxpayer must produce "credible and relevant evidence" showing that the assessment by IRS was erroneous. *Resyn Corporation v. U.S.,* 851 F.2d 660, 663 (3d Cir.1988).

■ The presumption of correctness "disappears" if the taxpayer successfully rebuts it. *Anastasato,* 794 F.2d at 887. The burden then shifts to IRS to produce evidence establishing that its assessment was correct. *Sullivan v. U.S.,* 618 F.2d 1001, 1008 (3d Cir.1980). If IRS fails to do so, the taxpayer prevails. *Anastasato,* 794 F.2d at 887.

■ Although the procedural burden of going forward with evidence is a shifting one, the ultimate burden of proof or persuasion remains at all times with the taxpayer contesting a tax assessment by IRS. *Sullivan,* 618 F.2d at 1007.

■ IRS produced no admissible substantive documentary evidence at trial indicating that debtor was involved in accepting illegal wagers. The only such evidence IRS offered was computer-generated "transcripts" indicating that in August of 1995 it had assessed debtor for unpaid wagering taxes owed for each month from December of 1989 through July of 1991.

Moreover, its lone witness, an IRS employee having no involvement in arriving at the conclusion that debtor had accepted

---

**1.** It is not disputed that writing numbers is a type of wagering that is not authorized under the laws of Pennsylvania.

**2.** They also are required to keep records of all wagers they accept as laid-off wagers from other persons and to maintain records indi-

cating the name, address, and registration number of each such person with whom they laid off wagers and of the gross amount laid-off with each such person, 26 C.F.R. § 44.6001–1(a)(1)(II).

illegal wagers, had no knowledge of the basis for the assessments, and was not able to link debtor to illegal wagering during that time interval. We have given no weight whatsoever to her testimony concerning the substance contained in the computer-generated assessments. We only consider that she sought said assessments utilizing debtor's description and that the computer submitted assessments containing inadmissible information.

Notwithstanding this, however, we are satisfied that the presumption of correctness attaches in this instance to the above assessment by IRS for unpaid excise tax owed by debtor for accepting illegal wagers. IRS produced "predicate evidence" linking debtor to wagering activity. Debtor admitted at trial that he wrote numbers during the period from December of 1989 through July of 1991, although he claims that he did so on his own and on a small scale. He further admitted to an involvement with Sabatini during this time and admitted that Sabatini also was in the business of writing numbers. At the very least, such minimal predicate evidence suffices to link debtor to the type of tax-generating activity at issue in this case and provides a basis for the presumption that the assessments against debtor by IRS were correct.

Perhaps recognizing this, debtor also offered testimony which was intended to rebut the presumption of correctness. Debtor testified that he only "laid off" wagers with third parties on behalf of Sabatini and did not himself accept any of them and consequently was *not* required to file Form 730 tax returns.

Debtor did not produce records identifying each person with whom he "laid off" the wagers and the gross amount he laid off with each such person, as required by 26 C.F.R. § 44.6001—1(a)(1)(II). *See* footnote 2, *supra*. He instead offered other rebuttal evidence. We are not satisfied that the evidence debtor offered sufficed to rebut the presumption that the assessment by IRS was correct.

Our review of debtor's testimony indicates that he offered only two items by way of rebuttal.

Debtor first steadfastly denied that he had accepted any wagers in connection with his involvement with Sabatini. Such a general denial of liability by a taxpayer is not sufficient by itself to rebut the presumed correctness of the tax assessment. *Anastasato*, 794 F.2d at 888. Something more is required.

With the exception of one month, the assessments by IRS ranged between $17,955.00 and $20,199.00 per month while debtor was involved with Sabatini. Because illegal wagers are taxed at the rate of two percent of the total amount wagered in a month, it follows that the gross amount of the illegal wagers debtor allegedly accepted ranged between $877,750.00 and $1,009,950.00 per month.

Debtor also attempted to rebut the presumed correctness of the assessments by testifying that the value of the house he owned jointly wife was (somehow) inconsistent with the amount of the monthly assessments. According to debtor, the house has an approximate value of $50,000.00. From this debtor evidently would have us infer that the assessments may not be correct since it is unlikely that a person accepting wagers totaling approximately $1,000,000.00 per month would own a house worth a mere $50,000.00.

Without something more, evidence that a taxpayer's house has a certain value in our estimation is not sufficient to rebut the presumption that the assessments by IRS are correct. Although the threshold a taxpayer must cross to rebut the presumption that a tax assessment by IRS is correct

unquestionably is not very high, not just any evidence will suffice.

Rebuttal evidence, we have noted, must be credible and relevant. *Resyn Corporation,* 851 F.2d at 663. We fail to see the relevance of the purported value of the house a taxpayer owns to the question whether the above assessment by IRS is correct. Debtor's attempted rebuttal is based on the unfounded and highly dubious assumption that the amount of illegal wagers one accepts correlates to the value of one's house.

To infer that a tax assessment may be erroneous merely from the purported value of one's house is in our estimation a *non sequitur.* It is no less a *non sequitur* than it is to draw such an inference from how expensive one's shoes are or whether one dines at expensive restaurants. Without something more, such considerations are *irrelevant* to the question whether a tax assessment is correct. Debtor did not offer anything more in this regard.

We conclude in light of the foregoing that debtor has not rebutted the presumed correctness of the tax assessment by IRS. From this it follows, by virtue of 26 C.F.R. § 44.6001(a)(1), that debtor was *required* to file Form 730 tax returns on a monthly basis and that the debt for unpaid excise tax and accrued pre-petition interest therefore is excepted from discharge[3] by § 523(a)(1)(B)(i) of the Bankruptcy Code because of his undisputed failure to do so.

### B.) Tax Penalties.

 The outcome is different for the penalties debtor owes for failing to report and pay the taxes he owes for accepting wagers. The penalties are dischargeable in this instance even though the underlying tax is not dischargeable.

Subsection 523(a)(7) of the Bankruptcy Code generally provides that any penalty "payable to and for the benefit of a governmental unit" is not dischargeable. *McKay v. U.S.,* 957 F.2d 689, 693 (9th Cir.1992).

Subparts (A) and (B) of § 523(a)(7), however, exclude certain *tax* penalties payable to and for the benefit of a governmental unit from this general rule. A tax penalty attributable to a tax "not of the kind specified in paragraph (1) of this subsection"—i.e., to a tax debt that is dischargeable—is dischargeable under § 523(a)(7)(A). *Id.* Alternatively, a tax penalty "imposed with respect to a transaction or event that occurred before three years before the filing of the [bankruptcy] petition"—i.e., more than three years before the bankruptcy filing—is dischargeable under § 523(a)(7)(B). *Id.* Even if the underlying tax debt is not dischargeable, a related tax penalty falling within the scope of § 523(a)(7)(B) is dischargeable. *McKay,* 957 F.2d at 693–94.

In other words, any tax penalty payable to and for the benefit of a governmental unit that is related to a dischargeable tax debt also is dischargeable. It also is dischargeable even though the underlying tax is not dischargeable if the tax penalty is related to a transaction or occurrence that occurred more than three years prior to the bankruptcy filing. The only tax penalties not dischargeable under § 523(a)(7)(A) and (B) are tax penalties which are related to underlying tax debt that is not dischargeable or which relate to transactions or events that occurred within three years of the filing of the bankruptcy petition.

---

**3.** If a pre-petition tax obligation is excepted from discharge, so also is the accrued pre-petition Interest owed on the unpaid tax obligation. See *Matter of Garcia,* 955 F.2d 16, 19 (5th Cir.1992); *Burns v. U.S.,* 887 F.2d 1541, 1543 (11th Cir.1989); *In re Hanna,* 872 F.2d 829, 830–31 (8th Cir.1989); and *Matter of Larson,* 862 F.2d 112, 119 (7th Cir.1988).

Debtor commenced the above bankruptcy case by filing a voluntary chapter 7 petition on February 4, 2000. The tax penalties imposed by IRS arise out of illegal wagers debtor allegedly accepted between December of 1989 and July of 1991, more than eight years before the filing of the bankruptcy petition. It therefore follows from the foregoing that these tax penalties are excepted from the exception to discharge found at § 523(a)(7) and therefore are dischargeable by reason of § 523(a)(7)(B) even though the tax liability underlying the penalties is not itself dischargeable.

— II —

**COUNT II**

Debtor objects in Count II of the amended complaint to the proof of claim of IRS and demands that IRS prove the amount of its claim.

It is not obvious what debtor is getting at when he asserts that the proof of claim of IRS is inaccurate. IRS has not filed a proof of claim in this bankruptcy case, perhaps because the chapter 7 trustee reported that this is a no-asset and the clerk of this court directed creditors not to file proofs of claim unless notified otherwise.

Setting aside this difficulty, we suspect debtor recognizes that the tax assessment of IRS is presumed to be correct under substantive tax law and that, as the taxpayer, he has the burden when challenging the assessment of going forward with evidence as well as the burden of proof or persuasion. Debtor apparently seeks to "turn this on its head" by characterizing his challenge as an objection to a proof of claim, thereby placing upon IRS the ultimate burden of proving that its claim is allowable in the amount stated.

The initial burden when a proof of claim is objected to lies with the claimant, who must allege facts sufficient to support the claim. If the claimant does so, the claim is *prima facie* valid. *In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3d Cir.1992). The burden of going forward shifts at that point to the objector to produce evidence "equal in force" to the *prima facie* case that negates it. The evidence produced must, if believed, negate at least one of the allegations that are essential to the legal sufficiency of the claim. *In re Allegheny International*, 954 F.2d at 173–74. If the objector satisfies its burden of production, the burden then shifts to the claimant to prove the validity of the claim by a preponderance of the evidence. The ultimate burden of proof or persuasion lies with the claimant at all times. *Id.*

This is at variance with the burdens imposed upon a taxpayer and IRS under substantive tax law when the taxpayer objects to a tax assessment by IRS. We previously noted that, under substantive bankruptcy law, the burden of proof or persuasion remains at all times with the taxpayer. *Sullivan*, 618 F.2d at 1007.

Debtor's efforts in this regard are to no avail. Principles derived from substantive law concerning who has the ultimate burden of proof in a dispute over taxes are not altered when the taxpayer files a bankruptcy and raises the dispute in bankruptcy court. The burden of proof remains where substantive tax law places it. *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

We determined when considering Count I of the amended complaint that, under substantive tax law, the ultimate burden of

proof or persuasion lies with the taxpayer at all times. Applying this substantive principle of tax law, we concluded that debtor had not met his burden in Count I. In light of the foregoing, we conclude that debtor's attempt in Count II to shift this ultimate burden to IRS now that the issues are before a bankruptcy court does not change the outcome of this case in any way.[4]

An appropriate order shall issue.

## ORDER OF COURT

**AND NOW**, this *28th* day of *March*, 2001, for reasons contained in the above memorandum opinion, it hereby is **OR-DERED, ADJUDGED**, and **DECREED** that the portions of the debt owed by debtor to United States Internal Revenue Service for unpaid excise taxes imposed for accepting illegal wagers, in the amount of $371,065.00, and for pre-petition interest accrued thereon, in the amount of $236,235.75, are **NOT DISCHARGEA-BLE**. The debt owed for related tax penalties, in the amount of $92,765.50, is **DIS-CHARGEABLE**.

It is **SO ORDERED**.

---

4. Debtor owes a non-dischargeable debt to IRS in the amount of $371,065.00 in unpaid excise tax for accepting illegal wagers and in the amount of $236,235.75 in accrued pre- petition interest thereon. These amounts are derived from the assessments IRS made in August of 1995 for each month for the period from December of 1989 and July of 1991.